UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

**CHAD R. DITTOE,**

      **Plaintiff,**

  v.                                **Civil Action 2:19-cv-4885**
                                      **Judge Michael H. Watson**
**COMMISSIONER OF SOCIAL**       **Magistrate Judge Chelsey M. Vascura**
**SECURITY,**

      **Defendant.**

## REPORT AND RECOMMENDATION

Plaintiff, Chad R. Dittoe ("Plaintiff"), brings this action under 42 U.S.C. § 405(g) for review of a final decision of the Commissioner of Social Security ("Commissioner") denying his application for a period of disability, disability insurance benefits, and supplemental security income. This matter is before the undersigned for a Report and Recommendation on Plaintiff's Statement of Errors (ECF No. 13), the Commissioner's Memorandum in Opposition (ECF No. 15), and the administrative record (ECF No. 9). For the reasons that follow, it is **RECOMMENDED** that Plaintiff's Statement of Errors be **OVERRULED** and that the Commissioner's decision be **AFFIRMED**.

### I. PROCEDURAL HISTORY

Plaintiff protectively filed his application under Title XVI of the Social Security Act (the "Act") for supplemental security income on April 21, 2014. Plaintiff filed his application under Title II of the Act for a period of disability and disability insurance benefits soon thereafter, on June 9, 2014. In both applications, Plaintiff alleged a disability onset of January 1, 2013.

Plaintiff's applications were denied initially on August 8, 2014, and upon reconsideration on January 19, 2015. Plaintiff sought a hearing before an administrative law judge. Administrative Law Judge Jeanine Lesperance (the "ALJ") first held a hearing on December 1, 2016. (*See id*. at 122.) On February 27, 2017, the ALJ issued a decision finding that Plaintiff was not disabled within the meaning of the Act. (*Id*. at 102–21.) On January 8, 2018, the Appeals Council denied Plaintiff's request for review and adopted the ALJ's decision. (*Id*. at 1–3.) Plaintiff thereafter timely commenced a civil action in this Court, *Dittoe v. Commissioner of Social Security*, Case No. 2:18-cv-202. On a joint motion of the parties, this Court remanded Plaintiff's claim to the Appeals Council on October 16, 2018. (Case No. 2:18-cv-202, ECF No. 16.)

A second administrative hearing was held on June 4, 2019, at which Plaintiff, represented by counsel, appeared and testified. (*See* R. at 695.) Vocational expert Charlotta J. Ewers (the "VE") also appeared and testified at the hearing. (*Id*.) On July 9, 2019, the ALJ issued a decision, again finding that Plaintiff was not disabled within the meaning of the Act. (*Id.* at 692–719.) The Appeals Council again denied Plaintiff's request for review and adopted the ALJ's decision as the Commissioner's final decision. (Comm'r's Mem. in Opp'n at 2, ECF No. 15.) Plaintiff then timely commenced the instant action. (ECF No. 1.)

Although at times unclear, the undersigned interprets Plaintiff's Statement of Errors as advancing three contentions of error. (Pl.'s Statement of Errors, ECF No. 13.) Namely, Plaintiff asserts that the ALJ committed reversible error when she: (1) improperly classified Plaintiff's past relevant work; (2) assessed a residual functional capacity ("RFC") that is not supported by substantial evidence; and (3) failed to properly evaluate whether Plaintiff met or equaled Listing 11.07.

2

## II. THE ADMINISTRATIVE DECISION

On July 9, 2019, the ALJ issued a decision finding that Plaintiff was not disabled within the meaning of the Social Security Act. (R. at 692–719.) The ALJ first found that Plaintiff meets the insured status requirements through December 31, 2017. (*Id*. at 697.) At step one of the sequential evaluation process,[1] the ALJ found that Plaintiff had not engaged in substantially gainful activity since January 1, 2013, the alleged onset date of Plaintiff's disability. (*Id*.) At step two, the ALJ found that Plaintiff had the following severe impairments: cerebral palsy with contracture of the right hand and arm; degenerative disc disease of the thoracic and lumbar spine; degenerative joint disease of the left knee; degenerative joint disease of the left shoulder; and obesity. (*Id*. at 698.) At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments described in 20 C.F.R. Part 404, Subpart P, Appendix 1. (*Id*. at 699–700.)

---

[1] Social Security Regulations require ALJs to resolve a disability claim through a five-step sequential evaluation of the evidence. *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). Although a dispositive finding at any step terminates the ALJ's review, *see Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007), if fully considered, the sequential review considers and answers five questions:

1. Is the claimant engaged in substantial gainful activity?
2. Does the claimant suffer from one or more severe impairments?
3. Do the claimant's severe impairments, alone or in combination, meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments, 20 C.F.R. Subpart P, Appendix 1?
4. Considering the claimant's residual functional capacity, can the claimant perform his or her past relevant work?
5. Considering the claimant's age, education, past work experience, and residual functional capacity, can the claimant perform other work available in the national economy?

*See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); *see also Henley v. Astrue*, 573 F.3d 263, 264 (6th Cir. 2009); *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001).

At step four, the ALJ considered the evidence of record including Plaintiff's testimony at the 2016 hearing and again at the 2019 hearing, treatment notes and other medical records, and the opinions of various medical and other sources. (*Id*. at 701–10.) The ALJ went on to assess Plaintiff's RFC as follows:

> After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform light work as defined in 20 C.F.R. 404.1567(b) and 416.967(b)[2] except he can lift and/or carry twenty pounds occasionally, ten pounds frequently, and can lift a box of copy paper up to sixty pounds up to twice per week, using primarily the left arm with the right as support; he cannot handle, finger, or feel with the right hand alone; he can occasionally push and pull with the right upper extremity, reach overhead with the bilateral upper extremities, climb ramps and stairs, stoop, and balance[*]; he can frequently kneel and crouch; and he can never crawl, climb ladders, ropes, or scaffolds, or work at unprotected heights.
>
> [*] "Balancing" is intended only as defined in the Selected Characteristics of Occupations and not intended to limit the type of basic equilibrium required to stand or walk on surfaces that are not narrow, slippery or erratically moving, or as needed to "perform gymnastic feats." It is apparent that the [VE] understood this as "light" jobs that typically require 6/8 hours of standing and walking were provided as consistent with this [RFC].

(*Id.* at 700–01.) Further, the ALJ found that Plaintiff was capable of performing his past relevant work as an Office Clerk. (*Id*. at 710.) At step five of the sequential process, relying on the VE's testimony, the ALJ alternatively found[3] that other jobs exist in significant numbers in the

---

[2] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time." 20 C.F.R. §§ 404.1567(b), 416.967(b).

[3] The ALJ could have concluded her analysis after finding at step four that Plaintiff was capable of performing his past relevant work. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). Nonetheless, she went on to find that Plaintiff can perform other work available in the national economy. Either finding would warrant a determination that Plaintiff is not disabled under the Act. 20 C.F.R. §§ 404.1520(a)(4)(iv)-(v), 416.920(a)(4)(iv)-(v).

4

national economy for an individual with Plaintiff's age, education work experience, and RFC. (*Id*. at 711–12.) Examples include Office Helper, Greeter, and Inspector. (*Id*. at 711.) The ALJ further found that Plaintiff is capable of making a successful adjustment to such employment. (*Id*. at 712.) The ALJ therefore concluded that Plaintiff was not disabled under the Social Security Act. (*Id.*)

Plaintiff now argues that the ALJ committed reversible error by: (1) improperly classifying Plaintiff's past relevant work; (2) assessing an RFC that is not supported by substantial evidence; and (3) failing to properly evaluate whether Plaintiff met or equaled Listing 11.07. (Pl.'s Statement of Errors, ECF No. 13.) The undersigned will limit discussion of the evidence to those portions directly relevant to Plaintiff's contentions of error.

### III. RELEVANT EVIDENCE OF RECORD

#### A. Medical Records

Available evidence includes medical records documenting Plaintiff's care dating back to January 2014. Those records reflect that Plaintiff was born with cerebral palsy, which has resulted in the chronic contracture of his right arm and hand. (*See, e.g.*, R. at 472–75.) The records further document that Plaintiff has received regular treatment for pain in either his low back and legs, knees, or left shoulder since January 2014. Plaintiff's treatment has included nerve block injections in his shoulder (*Id*. at 497–537), SI joint injections (*Id*. at 420–71), nerve ablation for lower back pain (*Id*. at 946–59), physical therapy (*Id*. at 381–84, 1086-87), and shoulder surgery (*Id*. at 975–76). Imaging taken throughout that time shows mild degenerative disc disease involving Plaintiff's lower thoracic spine and upper lumbar spine and mild facet joint osteoarthrosis at the lower lumbar spine (*Id*. at 346–47) along with mild bilateral neural foraminal narrowing and mild endplate degenerative edema (*Id*. at 1029–30).

Plaintiff underwent surgery in September 2017 to address a muscle tear and impingement syndrome in his left shoulder. (*See id*. at 972–74.) Immediately afterwards, Plaintiff experienced limited strength and range of motion in that shoulder. (*See, e.g., id*. at 1050.) Although some records reflect that range of motion improved with post-operative therapy (*Id*. at 1054–56, 1061), other progress notes show that Plaintiff continued to exhibit a reduced range of motion in his left shoulder through 2018 (*See e.g., id*. at 1004, 1005, 1007, 1009, 1011, 1013, 1015). In addition, Plaintiff was occasionally noted as having mild to moderate difficulty transitioning from sitting to standing and/or exhibiting an antalgic gait.[4] (*See id*. at 474, 496, 539, 544, 1080, 1072–78.) With these exceptions, Plaintiff's various healthcare providers consistently recorded largely normal physical exam results, with adequate strength and muscle tone in all extremities. (*See, e.g., id*. at 368–69, 370–74, 377–80, 407–13, 418–19, 661–63, 1004, 1005, 1007, 1009, 1011, 1013, 1015.)

**B. State Agency Medical Consultants**

State agency medical consultant Abraham Mikalov, M.D. reviewed Plaintiff's claim file at the initial level. (*Id*. at 161.) On August 8, 2014, Dr. Mikalov opined that Plaintiff could: lift/carry 20 pounds occasionally and ten pounds frequently; stand, walk, or sit for six hours in an eight-hour workday; occasionally climb ramps or stairs; occasionally stoop; and never climb ladders, ropes, or scaffolds. (*Id*. at 157–59.) Dr. Mikalov further opined that Plaintiff was limited in his ability to push, pull, or reach overhead with his right upper extremity, and should avoid all exposure to workplace hazards including unprotected heights. (*Id*.) State agency medical consultant Esberdado Villanueva, M.D. reviewed Plaintiff's claim file on

---

[4] As the ALJ noted in the administrative decision, several treatment records that state Plaintiff exhibited an antalgic gait also state that Plaintiff exhibited a normal gait. (*See, e.g., id*. at 493, 496, 539, 941, 944.) Several others, however, did not reflect such inconsistency.

6

reconsideration. (*Id*. at 173–82.) On December 9, 2014, Dr. Villanueva affirmed Dr. Mikalov's opinion in its entirety. (*Id*.)

### C. Plaintiff's Hearing Testimony

Plaintiff testified before the ALJ at the December 1, 2016 hearing (*Id*. at 126–41) and again at the June 4, 2019 hearing (*Id*. at 729–34). Over the course of his testimony, Plaintiff described his last position of employment, his medical condition, and the changes in his medical condition in the time between the 2016 and 2019 hearings.

Plaintiff testified that he previously worked for Exel, a shipping and logistics company. (*Id*. at 139). In that role, Plaintiff sat a desk and used a computer to print order records, at which point Plaintiff would collate and staple those records. (*Id*. at 129.) Other staff members would then collect the records from Plaintiff to ensure warehouse fulfillment. (*Id*.) Plaintiff was able to perform the job without using his right arm and hand. (*Id*. at 133, 728.) On occasion, Plaintiff walked across the warehouse to retrieve a box of paper to stock his desktop printer. (*Id*. at 130, 730.) Each box weighed approximately 58 pounds. (*Id*. at 140.) The ALJ inquired as to how Plaintiff accomplished this task, in light of the fact that Plaintiff's cerebral palsy severely limited the use of his right arm. (*Id*.) Plaintiff responded: "Usually I would go and tip [the box of paper] on one, like, tip it a little bit, rest it against my leg and then try to grab it with my left arm and then bring it up to my shoulder." (*Id*.) In other words, he would "tilt [the box], and then . . . curl it up on[to his] shoulder." (*Id*. at 729.) Plaintiff further testified that he stopped working at Exel due to a business closure. (*Id*. at 130.) As to prospects for future employment, Plaintiff testified that he believed he was unable to obtain other employment because he is unable to sit or stand for long periods of time without experiencing pain. (*Id*. at 133–34, 732–33.)

Plaintiff also provided testimony about his medical impairments. Plaintiff testified that he was born with cerebral palsy, which disabled his right arm and hand. (*See id*. at 134–35.)

7

Plaintiff further testified that the chronic pain in his back, hips, legs, and knees prevent him from sitting or standing for long periods of time. (*See id*. at 133, 732.) He reported needing to lie down or rest in a recliner after 20 or 30 minutes of activity. (*Id*. at 732.) Although Plaintiff testified that he is able to assist with lawn mowing and laundry, he noted that he does so at his own pace and with regular breaks. (*Id*. at 137, 735–36.) Plaintiff reported minimal changes in his abilities and limitations between the 2016 and 2019 hearings, despite continued treatment for pain in his left shoulder, back, and knees. (*Id*. at 732 ("Well as far as my day to day stuff, nothing's really changed. The amount of pain that I get doing certain activities has increased. But I still have the limitations of time like as far as standing usually more than 20, 30 minutes I have a hard time with, and my right leg tends to flare up with more pain than before."). *See also id*. at 733–39.) Among those minimal changes, Plaintiff noted that he perceived decreased strength in his left shoulder following a September 2017 surgery. (*Id*. at 734.) He further noted that he could no longer use his right arm for support, on account of muscle spasms. (*Id*. at 735.)

### D. Vocational Expert's Hearing Testimony

The VE also provided testimony before the ALJ at the 2019 hearing.[5] (*Id*. at 742–51.) As to Plaintiff's prior role at Exel, the VE testified that the work was performed at a range of "sedentary to heavy" because he sat at a desk for a majority of the time, but was occasionally required to lift 58 pounds. (*Id*. at 742.) In addition, the VE testified that Plaintiff performed the work at a semi-skilled level. (*Id*.) The ALJ posed a hypothetical to the VE, which encompassed the limitations ultimately assessed as Plaintiff's RFC, and asked whether such as individual would be able to perform Plaintiff's prior position at Exel, as Plaintiff performed it. (*Id*. at 743–

---

[5] The VE's testimony differs in some ways from the expert vocational testimony given at the 2016 hearing. However, because the VE's testimony alone was used to develop and support the RFC in the administrative decision now before the Court, the 2016 vocation testimony is not relevant to the instant inquiry.

8

44.) The VE testified that such an individual would be able to perform Plaintiff's prior position at Exel as he performed it. (*Id*. at 744.) The ALJ then asked whether other jobs might be available to such a hypothetical individual. (*Id*.) The VE responded in the affirmative and identified the following possible positions: Office Helper (light, unskilled, with 75,000 jobs available nationally); Greeter (light, unskilled, with 45,000 jobs available nationally); and Inspector (light, unskilled, with 45,000 jobs available nationally). (*Id*. at 744–45.) The VE clarified that her testimony reflected a reduction in the total number of jobs available under these three titles to accommodate the ALJ's limitation of "no handling, fingering, [or] feeling using the right hand alone, just using it as an assist for lifting and carrying." (*Id*. at 744.)

## IV. STANDARD OF REVIEW

When reviewing a case under the Social Security Act, the Court "must affirm the Commissioner's decision if it 'is supported by substantial evidence and was made pursuant to proper legal standards.'" *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009) (quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007)); *see also* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."). Under this standard, "substantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers*, 486 F.3d at 241 (quoting *Cutlip v. Sec'y of Health & Hum. Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)).

Although the substantial evidence standard is deferential, it is not trivial. The Court must "take into account whatever in the record fairly detracts from [the] weight" of the Commissioner's decision. *TNS, Inc. v. NLRB*, 296 F.3d 384, 395 (6th Cir. 2002) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951)). Nevertheless, "if substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is

9

substantial evidence in the record that would have supported an opposite conclusion.'" *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)).

Finally, even if the ALJ's decision meets the substantial evidence standard, "a decision of the Commissioner will not be upheld where the [Social Security Administration] fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007).

## V.    ANALYSIS

As previously noted, Plaintiff advances three contentions of error: (1) that the ALJ improperly classified Plaintiff's prior work and erred in finding that he could perform such prior work; (2) that the RFC assessed by the ALJ is unsupported by substantial evidence; and (3) that the ALJ failed to properly evaluate whether Plaintiff met or equaled Listing 11.07. For the reasons discussed below, the undersigned finds that each contention lacks merit.

**A.    Plaintiff failed to develop the argument that the ALJ improperly classified Plaintiff's past relevant work.**

Plaintiff first asserts in his Statement of Errors that the ALJ committed reversible error by 'improperly reclassifying' Plaintiff's past relevant work. (Pl.'s Statement of Errors at 6, ECF No. 13.) However, Plaintiff fails to further develop this argument.

Step four of the sequential evaluation process requires a classification of the claimant's past relevant work, and determination of whether he or she can perform such work as actually performed or as generally performed. *See* 20 C.F.R. §§ 404.1560(b), 416.960(b); S.S.R. 82-61, 1982 WL 31387, at *2. Here, the ALJ determined, based on the VE's testimony, that Plaintiff's past relevant work was that of "[o]ffice clerk . . ., generally performed at Specific Vocational

Preparation (SVP) 2, actually performed at SVP 3; generally performed at light, actually performed at sedentary, with rare lifting up to medium-to-heavy level." (R. at 710.)

Plaintiff's contention that the ALJ misclassified his past relevant work is clearly stated in the heading of the Statement of Errors' section titled "Issue I." (Pl.'s Statement of Errors at 6, ECF No. 13.) However, the substance of that section relates almost exclusively to Plaintiff's issues with the ALJ's formulation of the RFC. (*Id.* at 6–10. *See also, infra*, at V.B.) It is unclear to the undersigned whether Plaintiff argues that his past relevant work was not as an office clerk, was not generally performed as described, was not actually performed as described, or otherwise. As a result, Plaintiff's contention necessarily fails. *McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997) ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to . . . put flesh on its bones.") (internal quotation marks and citations omitted). It is therefore **RECOMMENDED** that Plaintiff's first contention of error be **OVERRULED**.

**B.     The RFC assessed by the ALJ is supported by substantial evidence.**

The second issue Plaintiff raises in his Statement of Errors (as interpreted by the undersigned) is that the ALJ's determination of his RFC is not supported by substantial evidence. (Pl.'s Statement of Errors at 7, ECF No. 13.) The undersigned disagrees.

A plaintiff's RFC "is defined as the most a [plaintiff] can still do despite the physical and mental limitations resulting from her impairments." *Poe v. Comm'r of Soc. Sec.*, 342 F. App'x 149, 155 (6th Cir. 2009); *see also* 20 C.F.R. §§ 404.1545(a), 416.945(a). The RFC determination is an issue reserved to the Commissioner. 20 C.F.R. §§ 404.1527(e), 416.927(e). Nevertheless, substantial evidence must support the Commissioner's RFC finding. *Berry v. Astrue*, No. 1:09-cv-000411, 2010 WL 3730983, at *8 (S.D. Ohio June 18, 2010). Further, an

ALJ is required to explain how the evidence supports the limitations that she sets forth in the claimant's RFC:

> The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations). In assessing RFC, the adjudicator must discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis (i.e., 8 hours a day, for 5 days a week, or an equivalent work schedule), and describe the maximum amount of each work-related activity the individual can perform based on the evidence available in the case record. The adjudicator must also explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved.

S.S.R. 96–8p, 1996 WL 374184, at *6–7 (internal footnote omitted).

> As previously noted, the ALJ assessed Plaintiff's RFC as follows:

> After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform light work as defined in 20 C.F.R. 404.1567(b) and 416.967(b) except he can life and/or carry twenty pounds occasionally, ten pounds frequently, and can lift a box of copy paper up to sixty pounds up to twice per week, using primarily the left arm with the right as support; he cannot handle, finger, or feel with the right hand alone; he can occasionally push and pull with the right upper extremity, reach overhead with the bilateral upper extremities, climb ramps and stairs, stoop, and balance; he can frequently kneel and crouch; and he can never crawl, climb ladders, ropes, or scaffolds, or work at unprotected heights.

(R. at 700–01) (footnote omitted). The ALJ considered the evidence of record in assessing Plaintiff's RFC and ultimately concluded that Plaintiff is not as limited as he claims. (*Id*. at 702–03.) The ALJ then offered a detailed and thorough explanation of how the evidence applies to the limitations assessed in—and guided the formulation of—the RFC. That explanation includes the following:

> [D]ue to the combination of obesity, degenerative disc disease, and degenerative joint disease with sporadic clinical findings of limited range of motion and tenderness, I find that the claimant is limited to light work with the postural and environmental limitations detailed above in the residual functional capacity. However, due to the generally mild to moderate medical imaging for the claimant's back and knee, I find that the evidence does not support greater limitations. His latest spinal MRI showed some disc bulges, but no significant central canal stenosis

12

with only mild neuroforaminal narrowing, and no specific findings of any compression of the cord or any nerve root. Furthermore, as discussed above, the clinical examinations usually showed normal motor and sensory functioning, including full strength or, at worst, only mild weakness. Moreover, the claimant reported relief with treatment.

The claimant's cerebral palsy with contracture of the right hand and arm also contributes in limiting the claimant to light work with significant postural limitations. The claimant's right upper extremity impairment further limits use of the right arm for support in lifting only with no independent fingering or handling of the right hand. However, as discussed above, the claimant successfully worked with this impairment at SGA levels for many years, and he testified that he lifted up to 58-60 pounds performing this work and successfully used a computer.

The claimant developed a new pain in his left shoulder in 2017. An MRI showed a labral tear. However, he was able to respond positively to an arthroscopic surgery with subacromial decompression. He also had improvement with physical therapy. Later visits with pain management consistently showed he had full strength in his extremities. However, his new left shoulder impairment does justify additional limitations with overhead reaching in the left arm as well.

. . .

As for the opinion evidence, I have considered the opinions of the State agency consultants Dr. Abraham Mikalov and Dr. Esberdado Villanueva and I give their opinions partial weight. They found the claimant could do light work with occasional pushing and pulling with the right upper extremity. They found the claimant could frequently balance, kneel, crouch, and crawl. They found the claimant could occasionally stoop and climb ramps and stairs. They found the claimant could never climb ladders, ropes, or scaffolds. They found the claimant could occasionally reach overhead with the right upper extremity. They found the claimant should avoid all exposure to hazards, such as unprotected heights. I have adopted the postural and environmental limitations. However, these consultants failed to take into account how his permanent right hand contracture would limit handling and fingering. Reducing pushing and pulling and overhead reach were also appropriate based on the right upper extremity contracture. However, with his new impairment involving the left shoulder, limitations to overhead reaching now extend to both upper extremities. I have also added that he was able to lift a box of copy paper a couple of times a week. Per his testimony, he could do that at his past job even without using the right hand. I find that the current evidence of additional medically determinable impairments and symptoms does not support any reduction in this functionality. I reduced crawling to none, which I find better accounts for the right hand contracture, as it would be hard to bear weight on that hand as the palm is not flat. Thus, these opinions are given partial weight.

13

(*Id*. at 707–08) (citations to the record omitted). The undersigned finds no error in the ALJ's assessment of Plaintiff's RFC; the above-quoted explanation, and the evidence of record cited therein, provide substantial evidence for the RFC.

Plaintiff advances a number of arguments in support of his contention that the ALJ erred by including the ability to lift a box of paper weighing up to 60 pounds twice weekly in the RFC. None are availing.

First, Plaintiff argues that the RFC assessed by the ALJ is flawed because it is "internally inconsistent," based on the Social Security Administration's exertional level definitions. (Pl.'s Statement of Errors at 7, ECF No. 13.) Specifically, Plaintiff takes issue with the ALJ's initial reference to "light work" and subsequent allowance for lifting up to 60 pounds twice weekly. (*Id*.) Plaintiff cites Social Security Ruling 96-8p in support, which requires an ALJ, *inter alia*, to "explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved." S.S.R. 96-8p, 1996 WL 374184 at *7. This reference in entirely inapposite. By its express terms, this portion of S.S.R. 96-8p applies to inconsistencies in the *evidence*; it does not, as Plaintiff suggests, limit the ALJ's ability to articulate an RFC that deviates from the exertional level definitions provided in the regulations. Here, the ALJ was wholly within her rights to do so based on her evaluation and consideration of the evidence. *See* 20 C.F.R. §§ 404.1546(c), 416.946(c).

Plaintiff also challenges the ALJ's reasoning leading to her conclusion that Plaintiff could lift a box of paper weighing up to 60 pounds twice weekly. (Pl.'s Statement of Errors at 9–10.) In Plaintiff's view, "[t]he ALJ's logic here is that because [Plaintiff] had the capacity to do something in the past that he can surely engage in that same activity currently." (*Id*. at 9.) The Commissioner counters that the ALJ reasonably included this ability in Plaintiff's RFC, because

Plaintiff testified that he: has lived with cerebral palsy since childhood; lifted 58-pound boxes twice weekly during his employment with Exel; left his employment with Exel due to a business closure; alleges no worsening of his cerebral palsy since he left Exel; and, could not return to such a position due to an inability to sit (rather than an inability to lift). (Comm'r's Mem. in Opp'n at 7–8, ECF No. 15.) The undersigned agrees with the Commissioner and, as a result, finds Plaintiff's argument unpersuasive.

In sum, the undersigned finds that the ALJ's decision to include Plaintiff's ability to lift up to 60 pounds twice weekly was within the permissible "zone of choice," and the assessed RFC is supported by substantial evidence. *Mullen*, 800 F.2d at 545. It is therefore **RECOMMENDED** that Plaintiff's second contention of error be **OVERRULED**.

**C.     The ALJ properly determined that Plaintiff does not meet or equal Listing 11.07(A).**

Plaintiff's third and final contention of error is that the ALJ erred in assessing whether Plaintiff meets or equals Listing 11.07(A). (Pl.'s Statement of Errors at 10, ECF No. 13.) At step three of the sequential evaluation process, a claimant has the burden of proving that he meets or equals all of the criteria of a listed impairment. *Malone v. Comm'r of Soc. Sec.*, 507 F. App'x 470, 472 (6th Cir. 2012); *Her v. Comm'r of Soc. Sec.,* 203 F.3d 388, 391 (6th Cir. 1999) (clarifying that the burden of proving disability remains with the Social Security claimant at steps one through four and does not shift to the Commissioner until step five). In determining whether a claimant satisfies the requirements of a listed impairment, the ALJ must "actually evaluate the evidence, compare it to [the relevant section of] the Listing, and give an explained conclusion, in order to facilitate meaningful judicial review." *Reynolds v. Comm'r of Soc. Sec.,* 424 F. App'x 411, 415–16 (6th Cir. 2011).

Here, the ALJ determined that Plaintiff does not meet or equal Listing 11.07. (R. at 700.) The Listing provides that a claimant must show cerebral palsy characterized by one of the following:

> A. Disorganization of motor function in two extremities, resulting in an extreme limitation in the ability to stand up from a seating position, balance while standing or walking, or use the upper extremities; or
>
> B. Marked limitation in physical functioning and in one of the following:
>
>   1. Understanding, remembering, or applying information; or
>   2. Interacting with others; or
>   3. Concentrating, persisting, or maintaining pace; or
>   4. Adapting or managing oneself; or
>
> C. Significant interference in communication due to speech, hearing, or visual deficit.

20 C.F.R. Pt. 404, Subpt. P, App'x 1, § 11.07. The ALJ explained her reasoning as follows:

> I also considered listing 11.07 (cerebral palsy) in assessing the claimant's impairments. However, the evidence does not show disorganization of motor function in two extremities; rather, the claimant only suffers substantial deficits in one extremity, the right arm. Additionally, the evidence does not show marked limitation in physical functioning or mental functioning, as defined in 11.00(G). Finally, there is no evidence of significant interference in communication due to speech, hearing, or visual deficit, nor has the claimant alleged such difficulties. Therefore, the claimant's impairments do not meet or medically equal the severity of listing 11.07.

(R. at 700.) The undersigned finds no error in the ALJ's analysis.

Plaintiff first argues that the ALJ erred because she "did little more than recite the requirements and conclude that the evidence did not demonstrate that those requirements were met." (Pl.'s Statement of Errors at 10, ECF No. 13.) Despite the fact that the undersigned disagrees with Plaintiff's characterization of the ALJ's analysis, the Sixth Circuit has made clear that there is no "heightened articulation standard" at step three when the ALJ's conclusion is supported by substantial evidence. *Bledsoe v. Barnhart*, 165 F. App'x 408, 411 (6th Cir. 2006).

16

Plaintiff further contends that "the record contains evidence documenting the existence of disorganization of motor functions in two extremities that have resulted in an extreme limitation in [Plaintiff's] ability to stand up from a seated position, balance while standing or walking, or using his upper extremities."[6] (Pl.'s Statement of Errors at 11–12, ECF No. 13.) As support, Plaintiff references medical treatment records in which Plaintiff was noted as having difficulty transitioning from a seated position to standing, or an antalgic gait. (*Id.*) However, Plaintiff neither points to, nor introduces, any evidence undermining the ALJ's conclusion that his cerebral palsy is characterized by disorganization of motor function in only *one* extremity, as opposed to the two required to satisfy the first element of Listing 11.07(A). *See Malone*, 507 F. App'x at 472 (quoting *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990)) ("For a claimant to show that his impairment matches a listing, it must meet *all* of the specified medical criteria. An impairment that manifests only some of those criteria, no matter how severely, does not qualify.") (emphasis in original). As a result, Plaintiff's argument fails. It is **RECOMMENDED** that Plaintiff's third contention of error be **OVERRULED**.

## VI. DISPOSITION

In sum, from a review of the record as a whole, the undersigned concludes that substantial evidence supports the ALJ's decision denying benefits. For the foregoing reasons, it is **RECOMMENDED** that the Court **OVERRULE** Plaintiff's Statement of Errors and **AFFIRM** the Commissioner of Social Security's decision.

---

[6] Although Plaintiff identifies the criteria for Listings 11.07(B) and 11.07(C) in his Statement of Errors, he does not offer any substantive argument that the ALJ erred in her evaluation of those sub-Listings.

17

## VII. PROCEDURE ON OBJECTIONS

If any party objects to this Report and Recommendation, that party may, within fourteen (14) days of the date of this Report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s). A Judge of this Court shall make a *de novo* determination of those portions of the Report or specified proposed findings or recommendations to which objection is made. Upon proper objections, a Judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the Magistrate Judge with instructions. 28 U.S.C. § 636(b)(1).

The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to have the District Judge review the Report and Recommendation *de novo*, and also operates as a waiver of the right to appeal the decision of the District Court adopting the Report and Recommendation. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

/s/ *Chelsey M. Vascura*
CHELSEY M. VASCURA
UNITED STATES MAGISTRATE JUDGE